[Civ. No. 5808. First Appellate District, Division Two.—May 26, 1927.]

HERBERT L. KREISS et al., Appellants, v. D. G. SWINEHART et al., Respondents.

[1] SALES — REPLEVIN — EVIDENCE — FINDINGS. — In this action in replevin by the sellers of certain oriental rugs to recover possession thereof from the purchasers, the evidence was sufficient to sustain the finding that an instrument leasing the rugs from the sellers was executed solely as a means of enabling the sellers to use it as collateral for borrowing money at a bank.

[2] ID.—OWNERSHIP — TITLE — FINDINGS — APPEAL. — In such action, where the trial court found that defendants were the owners and entitled to the possession of the rugs, the appellate court was bound to assume that the trial court found in accordance with defendants' contention that they signed an instrument leasing the rugs from the sellers for the sole purpose of allowing the sellers to use it as collateral to borrow money.

[3] ID.—LEASES—EVIDENCE.—In such action, evidence that the lease was executed for the sole purpose of enabling the purported lessors

to borrow money did not vary the terms of the lease, but merely
showed that no lease as such was executed as between the parties.

(1) 35 Cyc., p. 83, n. 7.   (2) 4 C. J., p. 779, n. 77.   (3) 22 C. J.,
p. 1214, n. 61.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.   J. J. Trabucco, Judge
Presiding.   Affirmed.

The facts are stated in the opinion of the court.

R. H. Cross and Cross & Brandt for Appellants.

Annette Abbott Adams and B. D. Marx Greene for Re-
spondents.

KOFORD, P. J.—Plaintiffs were furniture dealers.   They
brought this action in replevin against their customers, the
defendants, for possession of four oriental rugs.   Judgment
was for the defendants.   Plaintiffs appeal from the judg-
ment and from an order denying a new trial.

The issues in the case relate to whether the defendants had
purchased the rugs outright or whether they held the rugs
under a lease contract.   The defendants had been customers
of plaintiffs for a number of years and had purchased large
amounts of furniture.   The plaintiffs had been in the habit
of extending, or at least the defendants had been in the
habit of enjoying, very liberal terms of credit on these
purchases.   However, no lease contracts were employed by
the parties in their dealings with each other prior to the
rug deal involved here.   Commencing in May, 1921, various
rugs were by plaintiffs put down in defendants' residence
for trial, but it was not until about October 1, 1921, that
defendants settled upon and selected the four certain rugs
described in the complaint herein.   At that time the defend-
ants delivered to plaintiffs one oriental rug previously pur-
chased and paid for by them which was by the plaintiffs
accepted as equivalent to the payment of $1,900.   There
was no express agreement about the terms of payment or
credit.   A few days later the manager of plaintiffs' rug de-
partment called at defendants' residence and procured
defendant, Mrs. Swinehart, to sign a lease contract of the

rugs. This is not the lease contract involved or relied on here. Two further payments of $500 each were made on the rugs, but one of these payments was applied by the plaintiffs to the defendants' general account.

On June 21, 1922, plaintiffs' manager called upon both defendants at their residence, At this time a further payment of $500 was made. At the request of plaintiffs' manager the defendants both signed at this time a form of lease which, after describing the four rugs, stated, ''This is to certify that (defendants) have this day leased of (plaintiffs) the goods described above, value $7,410, subject to the following terms.'' The lease then recited $1,900 credit for the rug turned in, $500 credit for one of the $500 payments previously made, and a further credit of $500 for a payment on the then date. It provided that further payments should be made on October 1, 1922, January 1, 1923, and March 31, 1923. It provided that should plaintiffs fail to make any of the specified payments then the defendants agreed to surrender and return the said goods to plaintiffs. The lease also contained other provisions including a recapture clause for breach of covenants. This is the lease involved in this action.

Later, about November, 1922, according to the testimony, defendants returned two of the four rugs to be by plaintiffs stored or resold and the proceeds credited to defendants' account. At the time this action was commenced these two rugs were still in the possession of plaintiffs. The sale prices of these two rugs, which we will refer to as the returned rugs, were $540 and $4,500, respectively. The other two rugs, which we will refer to as the replevied rugs, were taken at the commencement of this action by plaintiffs under claim and delivery proceedings. They were priced at $850 and $1,520, respectively.

The complaint alleged that plaintiffs were the owners and entitled to the possession of the four rugs, and that all four were in possession of defendants, who refused to give possession on demand. Defendants' answer admitted plaintiffs were the owners and entitled to the possession and alleged that plaintiffs were in possession of the two returned rugs, but asserted ownership and right of possession in the two replevied rugs. The court's findings of fact were that plaintiffs were the owners and in possession of the returned rugs

but that defendants were the owners and entitled to the possession of the replevied rugs.

The allegations of the complaint and answer thus contained only general averments and the findings of fact following the pleadings do likewise, so that we must look to the evidence in the case for the exact theory of the decision. The evidence is undisputed that the defendants failed to make the payments called for by the terms of the lease. Respondents contend that the judgment is supported by the evidence in the record upon two theories: First, that there was a complete sale of the rugs prior to the lease signed on June 21, 1922, and therefore, there was no consideration for the execution for the said alleged lease. Second, that the alleged lease was signed for the particular and limited purpose of permitting the plaintiffs to use the same as a means of borrowing money at the bank, and that it was not in the minds of the parties that the lease should represent the transaction as between the parties nor be binding upon them according to its terms.

[1] Appellants contend that the evidence does not show that the sale was complete with title passed when the lease agreement was signed so that there was a consideration for the lease; that even if title had passed the lease by its terms extended the defendants' period of credit and that was a consideration; and that in any event the signing of the lease was a novation. Our view of the evidence is that the sale was complete and title passed when the final selection of rugs was made and the $1,900 rug was turned in on the purchase price. It is a disputed point in the briefs whether the lease gave more favorable terms of credit than the defendants had a right to expect from the statements made by the salesman. It would not help in solving this case to determine this question. The appellants' arguments are predicated upon the assumption that the lease exists as a fact between the parties. Assuming the existence of the lease, they argue its covenants are its consideration. If there is no lease between the parties, no question of consideration need be determined.

[2] The testimony of both defendants was that the plaintiffs' manager represented that his firm wanted the lease signed so that it could raise money with it as collateral; that upon this representation they signed the lease for the

sole purpose of allowing plaintiffs to use it as collateral to borrow money; that there was no intention of the parties that it would constitute the existing or any new agreement or understanding between the parties. Oral testimony offered by plaintiffs was to some extent in conflict with defendants on this point. The lease agreement was never used as collateral. Upon this appeal we are required to presume that the court decided the lease was signed for the purpose of a limited use. **[3]** This evidence does not vary the terms of the lease but shows that no lease as such was executed as between the parties. (*Nolan* v. *Nolan,* 155 Cal. 477, 482 [132 Am. St. Rep. 99, 17 Ann. Cas. 1056, 101 Pac. 520]; *Peugh* v. *Davis,* 96 U. S. 332, 336 [24 L. Ed. 775, see, also, Rose's U. S. Notes]; *Bridges & Co.* v. *Bank of Fergus County,* 77 Mont. 524 [251 Pac. 1057, 1060]; *McCaull-Dinsmore Co.* v. *Stevens,* 59 Mont. 206 [194 Pac. 213, 214]; 22 Corpus Juris, sec. 1617, p. 1214; 17 Cyc. 692, 694.) It is like proving an absolute deed to be a mortgage, or an assignment to be for the purpose of collection only.

The judgment and order are affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 25, 1927.