FIRST STATE BANK OF DECATUR *v.* DAY.

O'DELL *v.* FIRST STATE BANK OF DECATUR.

1. TENDER—FORECLOSURE OF MORTGAGES—AMOUNT.
   An injunction against foreclosing a mortgage held by the mortgagee, a savings bank, was properly refused in a suit brought to restrain it from foreclosure by advertisement, and a decree was correctly granted in favor of the mortgagee in proceedings brought to foreclose the instrument by the holder, to whom the defendants had tendered a sum insufficient to pay the principal and interest, all of which the bank had declared to be due and payable for defendant's default under the terms of the security; the two causes being consolidated and heard as one.

2. SAME—BILLS AND NOTES.
   Where the tender was made as indicated by the parties to pay all that was due under such mortgages and defendant's indebtedness included a note for interest that he had allowed to accrue, and which remained unpaid, the tender should have included the sum due for such interest, although the bank had indorsed upon the mortgage notes, as paid, the sum represented by the note.

3. SAME—INTEREST—MORTGAGES.
   The objection that the bill of complaint did not rely upon any claim that the principal had become due, was un-

tenable where the complainant had elected to declare the entire debt due and payable; the mortgagee was entitled to declare the principal due, if it had been in arrears for a sufficient length of time, the mortgage so providing by express language, and if the tender was not large enough to satisfy the sum due.

4. SAME—ESTOPPEL.

No estoppel could be said to have arisen from a letter of the holder of the mortgage to the second mortgagee, one of the joint defendants, containing the advice or suggestion that the second mortgagee pay the prior lien, neither party having changed his situation because of the position taken in the letter by the senior incumbrancer.

5. MORTGAGES—NOTICE OF FORECLOSURE.

In a notice of foreclosure, the date rather than the day stated controls, and in the case of error in naming Friday for Saturday, the ninth, of the month, the notice was not void therefor.

6. APPEAL AND ERROR—CONTEMPT—FORECLOSURE.

The court on appeal will not review contempt proceedings for violation of an injunction of the lower court, upon a record which does not disclose what, if any, adjudication was made.

7. MORTGAGES—FORECLOSURE—DECREE—SOLICITOR'S FEE.

Without some basis in the facts or evidence, the trial court exceeded its authority in providing for a solicitor's fee of $100, by way of punishment for contempt in violating a restraining order of the court; nor was there ground for stopping interest on the amount bid at mortgage sale on foreclosure by advertisement.

Appeal from Van Buren; Des Voignes, J. Submitted June 25, 1915. (Docket No. 52.) Decided September 28, 1915.

Bill by the First State Bank of Decatur against James Ingersoll Day and Benjamin F. J. O'Dell for the foreclosure of certain mortgages; also injunction bill by said O'Dell and Day against the First State Bank of Decatur to restrain foreclosure by advertisement of a third mortgage. The causes were consoli-

dated. From a decree for complainant bank, said O'Dell and Day appeal. Modified and affirmed.

*Glenn E. Warner*, for appellants O'Dell and Day.

*David Anderson*, for appellee bank.

Stone, J. These cases were consolidated and heard as one case in the circuit, and by stipulation of counsel they are here presented in the same manner. The questions at issue may be summarized as follows:

James Ingersoll Day, upon different dates, gave to the First State Bank of Decatur, Mich., his three several promissory notes, secured by three separate mortgages upon certain real estate. The first note bears date July 29, 1909, was for the sum of $1,300, due five years after date, with interest at the rate of 7 per cent., payable semi-annually, and was secured by mortgage on that part of the E. ½ of the N. E. ¼ of section 25, township 4 S., range 15 W., lying north of the Michigan Central Railroad, and containing 35 acres, more or less. The second note bears date January 4, 1910, was for the sum of $2,600, payable as follows: $500 on January 4, 1912; $500 on January 4, 1913; and $1,600 on January 4, 1915—with interest at 7 per cent. per annum, payable semi-annually, and was secured by mortgage on the north 50 acres of the W. ½ of the N. E. ¼ of said section 25. The above-described two notes and mortgages are the ones embraced in the chancery foreclosure suit by the bank. The third note bears date April 1, 1911, was for $2,500, payable as follows: $500, April 1, 1913; and $2,000, April 1, 1914—with interest at the rate of 7 per cent. per annum, payable semi-annually, secured by mortgage upon both of the above-described parcels of land.

On June 5, 1912, the interest on these three notes was past due, in the sum of $316.45, and Mr. Day gave his promissory note for this interest, payable January

1, 1913, with interest at 7 per cent. per annum. The amount of this note was distributed and indorsed on the three notes, said indorsements showing the interest on each of them to be paid up to the last due date preceding said June 5, 1912. It will be noted that on the first note none of the principal would be due, according to its terms, until July 29, 1914. On the second note an installment of principal of $500 came due January 4, 1912, but this installment was extended to January 4, 1914, by a letter written by the cashier of the bank to Mr. Day on June 6, 1912. Another installment of principal of $500, however, became due January 4, 1913. On the third note an installment of principal of $500 became due April 1, 1913. This is the note which is involved in the injunction suit brought against the bank. The record shows that on June 7, 1912, Mr. Day had given a fourth mortgage to Benjamin F. J. O'Dell, of Chicago, to secure the payment of $8,000, which mortgage covered the entire property above described.

In April, 1913, E. B. Copley, president of said bank, wrote two letters to Mr. O'Dell relating to the mortgages held by the bank. They were as follows:

"THE FIRST STATE BANK.
"DECATUR, MICH., April 12, 1913.
"Benj. F. J. O'Dell,
   "Chicago, Ill.
*"Dear Sir:—*
   "As I understand, you hold a second mortgage against Jas. I. Day. It is possible you might be interested in keeping up the interest on the first mortgages which we hold in this bank. The directors held a meeting yesterday and had a resolution to foreclose these Day mortgages, along with some other mortgages, which we hold, unless the interest was paid that is due, about some $783, or thereabouts. This will be done very soon unless *all* this interest is paid in full. The bank examiner also noticed this past-due paper when he was here, and we cannot carry this

kind of paper as a bank asset any longer, so, if you are interested, kindly let me hear from you immediately.                    Yours respectfully,

"FIRST STATE BANK, DECATUR, MICH.,
                    "Per E. B. COPLEY."

"FIRST STATE BANK.
                    "DECATUR, MICH., April 21, 1913.
"Benj. F. J. O'Dell,
    "Chicago, Ill.
"*Dear Sir*:—

"I had a talk with our attorney for the bank a few days ago, and he said in regard to foreclosing the Day mortgages that he would want to notice them for trial by the 28th or 30th day of April, at the latest, so I thought I would let you know, so if you wished to pay the interest up, as we talked, in full, you could do so. Now, I do not want you to think I am urging this interest payment, for it is up to you to do as you choose, for we have no claim upon you; but it is only a matter of courtesy for us to give you the chance, if you do, so you had better come to Decatur, for I can give you several hints in regard to the property that will be of use to you in the future, and of more value than any cost of ticket or time.

                    "Yours respectfully,
                    "E. B. COPLEY."

Between the dates of these letters Mr. O'Dell came to Decatur and saw Mr. Copley. The latter claimed that, as interest due and secured by the bank mortgages, there should be included the note of $316.45. To this claim Mr. O'Dell objected. Finally, on April 23, 1913, Mr. O'Dell and Mr. Day came to Decatur, having in their possession $1,000 in gold which belonged to Mr. Day, and which they claim they tendered to Mr. Hill, the cashier of the bank, in full for all interest due, and $500 of the principal. This was refused; the bank claiming that there was then due $783 of interest and two installments of principal of $500 each. In all the conversations between these parties the three mortgages were considered together, and there was no claim that there was any

separating of one mortgage from another, or one note from another, or any attempt to tender the amount of one particular note or mortgage. There is no claim that there was any specification that the tender should apply to one mortgage more than to another, except as more might be due on one note than on another.

The bill to foreclose the first two mortgages was filed on May 2, 1913. In both of the said mortgages was the following provision:

"It is agreed that, if the interest above stipulated to be paid shall remain unpaid for the space of 60 days after the same shall fall due, the whole amount of principal remaining unpaid, as well as said interest, shall thereupon become due and payable forthwith, notwithstanding the time first above limited for the payment of said principal shall not then have expired."

The foreclosure bill contained an allegation that, by the terms of said mortgages above set forth, complainant had elected, and did elect, to take advantage of said stipulations, and did declare all sums secured by said mortgages due, both principal and interest. The defendants answered, denying that the amount claimed was due, and claiming that by said tender complainant was estopped and precluded from foreclosure, and that nothing was due upon said mortgages. Early in May, 1913, the bank commenced proceedings to foreclose by advertisement its mortgage of April 1, 1911, being its third mortgage on said property.

On August 4, 1913, the said Day and O'Dell filed their bill of complaint against the bank to restrain the foreclosure by advertisement. The bill set forth the mortgage to O'Dell, the tender made, and claimed that there was nothing due upon said bank mortgage of April 1, 1911. A temporary injunction restraining the sale was granted by the circuit judge. Later a motion was made to dissolve the injunction. The motion was argued and granted—

"provided that the complainants in the injunction
suit did not file a bond to be approved by the register,
conditioned to save the defendants harmless, etc., on
or before August 29, 1913, and a bond was filed before
August 29, 1913. September 11, 1913, the complain-
ants made a motion to withdraw the bond they filed
August 29th, and file another bond. It was noticed
for argument September 17, 1913. In the meantime
the sale that was advertised to take place August 9th,
on account of the temporary injunction, was adjourned
until Saturday, August 30th, and on said day-adjourned
until September 12th, at which time a sale was made."

So reads the record. Later contempt proceedings
were instituted against the president of the bank and
its attorney for having made the sale under the mort-
gage-sale notice. Interrogatories were filed and an-
swered. The record contains none of the evidence in
the contempt proceeding, but it appears that a hearing
was had, and an order was entered declaring said fore-
closure sale of September 12, 1913, null and void. It
appears that later said order was amended and modi-
fied. The cases, being at issue, were heard upon testi-
mony taken in open court, and a decree of foreclosure
was entered in the suit by the bank to foreclose the
first two mortgages. The court also entered a decree
in the injunction case, in which it found as matter of
fact that said complainants did not tender the amount
due on the mortgages and notes mentioned in the bill
of complaint, at the time claimed by them, and that
the proof did not sustain the allegations of the bill,
and that complainants were not entitled to the relief
therein prayed, and were not entitled to have the fore-
closure proceedings enjoined, and the deed issued set
aside and held for naught. By this decree the court
dismissed the injunction bill, but decreed that com-
plainants therein might redeem the premises on or
before September 14, 1914, by paying the amount due
on the date of said sale and for which said premises

were bid in, less $100; it being the intention of the decree to allow no costs or interest to the defendant in addition to the amount at which said premises were bid in, and that there should be deducted from such amount, in case of redemption, $100 allowed as solicitor's fees to said complainants. From this part of said decree the bank has appealed, and Day and O'Dell have appealed from both decrees.

As we understand the claims of Day and O'Dell, they are that the decrees should be reversed for the following reasons:

(1) Because of the alleged tender of $1,000.

(2) Because the bill of complaint in the foreclosure case and the notice of sale under the last bank mortgage are both based solely on default in payment of interest.

(3) On a claimed estoppel, based on the letters above set forth.

1. Does the alleged tender afford sufficient grounds for the reversal of the decrees? We think not. We agree with the trial court that the amount tendered was insufficient in amount. It will be noticed that the tender was made as a tender of everything due upon the notes and mortgage, both interest and principal. Manifestly the amount was too small.

2. An examination of the bill of complaint in the foreclosure case, and of the notice of sale, shows that there is no merit in the second point. If the tender was not large enough to cover the amount due, and the interest being in arrears a sufficient length of time, the bank had the right to declare the entire amount due and foreclose therefor. *Johnson* v. *Van Velsor*, 43 Mich. 208 (5 N. W. 265); *Hawes* v. *Insurance Co.*, 109 Mich. 324 (67 N. W. 329, 63 Am. St. Rep. 581).

3. We do not think there is any merit in the claim of estoppel. They did not meet the terms of the letter of Mr. Copley. In his claim of $783 there was included

the interest note of $316.45, which was repudiated by O'Dell. He could not repudiate a part of the offer and accept the remainder. The letter in no event could be the basis of an estoppel. O'Dell was already a subsequent mortgagee. The letter did not change his situation or alter his legal rights.

It is further claimed by Day and O'Dell that the notice of sale was defective, in that the notice fixed the day of sale as Friday, August 9th, when it should have been Saturday, August 9th, and the notice was published the full time required by law before the correction was made from Friday to Saturday. It might be a sufficient answer to this claim to say that the injunction bill was not based at all on this claimed defect, but was based entirely on the claim that there was nothing due upon the mortgage. The statute does not require the day of the week to be stated. We think that in the case of such a discrepancy the day of the month is controlling, especially where there is no claim that the party complaining is misled. *Lee* v. *Clary,* 38 Mich. 223, *Reading* v. *Waterman,* 46 Mich. 107 (8 N. W. 691). This court has held that, where the day of the week stated in a writ as the return day does not correspond with the day of the month, the latter will control. *State Savings Bank* v. *Circuit Judge,* 95 Mich. 100 (54 N. W. 632), citing *Ingersoll* v. *Kirby,* Walk. Ch. 27. A trifling mistake in the notice of sale, not of such a nature as to mislead or injure any one, may be corrected in the subsequent publications of the notice, without affecting the validity of the proceedings. 27 Cyc. p. 1474.

We have examined the other points urged by counsel against the validity of the notice, but think that they are without merit. We are of opinion that the decree of foreclosure should be affirmed.

Upon this record we are of the opinion that the contempt proceedings are not before us. It does not dis-

tinctly appear that there has been an adjudication of that matter in the court below. For some reason, not stated in the decree in the injunction case, the court stopped the running of interest upon the amount bid at the sale in the advertisement foreclosure, and awarded to complainants $100 solicitor's fee. Whether or not this was intended to be by way of punishment for contempt of court we are unable to say. There seems to be no basis stated for such order. We find no evidence to warrant the stopping of interest, or the granting of $100 solicitor's fee, and both of these matters should be eliminated from the decree dismissing the injunction bill.

In all other respects that decree will be affirmed. The bank will recover the costs of this court against Day and O'Dell.

BROOKE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice McALVAY took no part in this decision.